1  Andrew H. Schapiro (*pro hac vice*)
   andrewschapiro@quinnemanuel.com
2  Stephen A. Swedlow (*pro hac vice*)
3  stephenswedlow@quinnemanuel.com
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
4  191 N. Wacker Drive, Suite 2700
   Chicago, Illinois 60606-1881
5  Telephone: (312) 705-7400
   Fax:       (312) 705-7401
6
7  Joseph C. Sarles (Bar No. 254750)
   josephsarles@quinnemanuel.com
8  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   865 South Figueroa Street, 10th Floor
9  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
10 Fax:       (213) 443-3100
11
   Ashley C. Keller (*pro hac vice*)
12 ack@kellerlenkner.com
   KELLER LENKNER LLC
13 150 N. Riverside Plaza, Suite 4270
   Chicago, IL 60606
14 Telephone: (312) 741-5222
15 Fax:       (312) 970-3502

16 [Additional Counsel Appear on Signature Page]

17 *Attorneys for Plaintiff and the Putative Class*

18              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
19

| | |
|---|---|
| R.A., a minor, by and through his guardian, Steve Altes, individually and on behalf of all others similarly situated. | Case No. 2:19-cv-06454-CJC-AGR |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| AMAZON.COM, INC., a Delaware corporation, and A2Z DEVELOPMENT CENTER, INC., a Delaware corporation, | |
| Defendants. | |

Millions of Americans use Amazon Alexa smart-speaker technology in their homes. People speak to Alexa-enabled devices such as the Echo or Echo Dot about everything from the mundane ("Alexa, what's the weather?") to the deeply personal ("Alexa, what are the symptoms of depression?").

Most people believe that when they speak to an Alexa-enabled device, it converts their voice into a set of digital computer instructions. They expect that this digital query is sent over the internet for processing, that a digital response is returned, and that the device then converts the response into Alexa's voice. They do not expect that Alexa is creating and storing a permanent recording of their voice. This expectation is reasonable; it would be easy for Alexa to work this way, as numerous other voice-recognition technologies do.

But Alexa does something else. After Alexa processes a user's commands, it saves permanent recordings of the user's voice to Amazon's and Lab 126's servers. Defendant Amazon.com, Inc. ("Amazon") and its research and development subsidiary Defendant A2Z Development, Inc. ("Lab126") then analyze and use these voice recordings for Amazon's commercial benefit. These uses include allowing workers around the world to listen to the voice recordings and creating voiceprints of users, which can be used to identify them when they speak to other devices in other locations. Defendants have thus built a massive database of billions of voice recordings containing the private details of millions of Americans.

Defendants purport to obtain consent to record individuals who set up an Alexa-enabled device. But there is a large group of individuals who do not consent to be recorded when using an Alexa-enabled device and who use Alexa without any understanding or warning that they are being recorded and voiceprinted: children.

Alexa routinely records and voiceprints millions of children without their consent or the consent of their parents. This practice violates California law, which prohibits the recording of oral communications without the consent of all parties to the communication. This prohibition recognizes the unique privacy interest

implicated by the recording of someone's voice. That privacy interest is all the more powerful in light of modern voiceprinting technology and the potentially invasive uses of big data by a company the size of Amazon. It takes no great leap of imagination to be concerned that Amazon and Lab126 are developing voiceprints for millions of children that could allow the company (and potentially governments) to track a child's use of Alexa-enabled devices in multiple locations and match those uses with a vast level of detail about the child's life, ranging from private questions they have asked Alexa to the products they have used in their home.

Plaintiff R.A. ("Plaintiff"), a minor, by and through his guardian Steve Altes, brings this Class Action Complaint against Defendants Amazon and Lab126 to obtain redress for all California minors who have used Alexa in their home and have therefore been recorded by Amazon, without consent. Plaintiff alleges as follows as to himself, upon personal knowledge of his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

**PARTIES**

1. Plaintiff R.A. and his parent and guardian Steve Altes are natural persons and citizens of the State of California and residents of the County of Los Angeles.

2. Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.

3. Defendant a2z Development Center, Inc., d/b/a Amazon Lab126, is a Delaware corporation with its headquarters and principal place of business located at 1120 Enterprise Way, Sunnyvale, California. Lab126 employs thousands of individuals, many of whom work on Alexa-enabled devices and software at its Sunnyvale headquarters, and is a subsidiary of Amazon.com, Inc.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendants because they maintain offices in California and have registered to do business therein. Additionally, Defendants engaged in a substantial part of the events and conduct giving rise to Plaintiff's claims in this State, and have knowingly placed Alexa Devices into California's stream of commerce.

5. This Court has ruled that it has subject-matter jurisdiction over this action. (ECF No. 41.)[1]

6. Venue is proper in this District because Plaintiff and his guardian reside herein, and Plaintiff's injuries were sustained in this county.

## FACTUAL BACKGROUND

### *Amazon and the Alexa Device*

7. After starting as an online book retailer, Amazon has grown into a dominant force in the retail, internet, and technology sectors. Amazon operates the world's leading e-commerce platform, with net sales of $232 billion in 2018.[2] Amazon is the world's largest provider of cloud computing services. According to some reports, 42% of the internet is powered by Amazon Web Services, which is more than double Microsoft, Google, and IBM combined.[3] And Amazon also develops technology products including Alexa, the world's leading voice-responsive personal-assistant technology.

---

[1] Plaintiff respectfully disagrees with that finding and is contemporaneously petitioning the Ninth Circuit for leave to appeal that ruling.

[2] Form 10-K, Amazon.com, Inc., https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm (last visited September 18, 2019).

[3] Matt Ward, *Amazon Eats the World*, medium.com (Jan. 29, 2018), https://medium.com/better-marketing/the-big-4-part-one-amazon-the-company-that-consumes-the-world-fb4679f10708 (las visited September 18, 2019).

8. Lab126, headquartered in Sunnyvale, California, began engineering the Echo "smart speaker" in 2010, eventually leading to Amazon.com launching the product and the Alexa voice assistant (also developed by Amazon Lab126) on November 6, 2014, with sales commencing shortly thereafter. Since then, Lab 126 has developed and Amazon has launched various additional Echo products, including the Echo Dot, Echo Plus, Echo Sub, Echo Show, and Echo Input. Each Echo device contains a speaker, microphones, a small computer, internet connectivity, and the Alexa program.

9. Lab126 subsequently added Alexa to Amazon's Fire TV digital media player, and other products developed by Lab126 and sold by Amazon. Amazon also allows manufacturers of devices as varied as electrical outlets, lightbulbs, thermostats, and security cameras to offer Alexa integration, with Lab126 overseeing the design and integration of Alexa into those devices. As a result of Lab126's work, users can control third-party devices through Alexa.

10. Amazon also now allows manufacturers to offer devices with Alexa "built-in," essentially allowing other speakers and devices to offer much of the functionality of an Echo or Echo Dot[4] (collectively, all devices featuring Alexa

---

[4] Alistair Charleton, *Which Cars Have Amazon Alexa Integration?*, Gearbrain (April 29, 2019), https://www.gearbrain.com/which-cars-have-amazon-alexa-2525958778.html (last visited September 18, 2019); James Stables, *The Best Amazon Alexa Built-In Speakers*, The Ambient (Apr. 8, 2019), https://www.the-ambient.com/guides/best-alexa-built-in-speakers-1196 (last visited September 18, 2019); Dana Kerr and Ben Rubin, *Alexa is Coming to Sony Smart TVs*, CNET (Sept. 20, 2018, 11:27 a.m. EST), https://www.cnet.com/news/alexa-is-coming-to-tvs-well-at-least-sony-smart-tvs/ (last visited September 18, 2019); Jonathan Vanian, *Amazon Alexa is Now Available on HP, Acer, and Asus Computers*, Fortune (Jan. 8, 2018), http://fortune.com/2018/01/08/amazon-alexa-hp-acer-asus/ (last visited September 18, 2019).

integration or functionality are referred to herein as "Alexa Devices").[5] Lab126 is directly responsible for developing and integrating Alexa into those devices.

11. As of October 2018, Amazon had sold approximately 47 million Echo devices.[6] In January 2019, Amazon reported that over 100 million total devices had been sold with Alexa pre-installed.[7]

12. In the years since the Echo launched, Lab126 has continued to develop and implement Alexa software updates for existing Alexa Devices, and has played and continues to play an integral role in the development of new Alexa devices.[8]

13. Lab126 developed Alexa as a natural-language processing system. Alexa "listens" to people's verbal communications and responds to those communications in a simulated human voice. People most frequently interact with Alexa in their homes.

14. Using Alexa on an Alexa Device, whether an Amazon device such as an Echo, or a third-party device like a Sonos One speaker, is relatively simple. Once an individual has an Alexa Device, the person needs two more things: a WiFi Internet connection, and the Alexa mobile application (the "Alexa App") installed on his or her smartphone or tablet.

---

[5] For purposes of this Complaint, the term "Alexa Devices" specifically excludes the Amazon Echo Dot Kids Edition.

[6] Brian Dumaine, *It Might Get Loud: Inside Silicon Valley's Battle to Own Voice Tech*, Fortune (Oct. 24, 2018), http://fortune.com/longform/amazon-google-apple-voice-recognition/ (last visited September 18, 2019).

[7] Lucase Matney, *More Than 100 Million Alexa Devices Have Been Sold,* Tech Crunch (Jan. 4, 2019) https://techcrunch.com/2019/01/04/more-than-100-million-alexa-devices-have-been-sold/ (last visited September 18, 2019).

[8] Ry Crist, *Behind the scenes at Alexa's laboratory*, CNet (Apr. 23, 2018), https://www.cnet.com/news/behind-the-scenes-at-amazon-alexa-laboratory-lab126/ (last visited September 18, 2019).

15. To use the Alexa App, the individual must have an account with Amazon. The individual must then follow the set-up process on the Alexa Device, which eventually includes pairing the Alexa Device with the Alexa App. For third-party Alexa Devices, the device itself will function even without being paired to the Alexa App, but the Alexa functionality will be disabled.

16. Once the individual has paired the Alexa Device to the Alexa App, the Alexa Device is ready for use by anyone, including people who have not set up the Alexa App or consented to being recorded.

### *Amazon and Lab 126 Record Children Without Their Consent*

17. Alexa records and responds to communications immediately after an individual says a wake word (typically "Alexa" or "Echo").[9] Alexa Devices accomplish this by storing a second or two of audio in short-term, random-access memory (RAM), analyzing that temporary audio recording for the presence of a wake word, and then overwriting it if the wake word is not recognized. As a result, no permanent recording is supposed to be made if the wake word is not recognized.[10]

18. If the wake word is recognized, Alexa software records the ensuing communications and—unlike some other smart devices—transmits the recordings to Amazon's and Lab 126's servers for interpretation, processing, and analysis.

19. Once Alexa has responded to recordings sent by Alexa Devices, Amazon and Lab 126 indefinitely store a copies of those recordings on their servers for later use and analysis.

---

[9] Matt Day, Giles Turner, and Natalia Drozdiak, *Amazon Workers Are Listening to What You Tell Alexa*, Bloomberg (Apr. 10, 2019, 5:34 p.m. CDT), https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio (last visited September 18, 2019).

[10] Recent news reports, however, have revealed that Alexa devices regularly "inadvertently" record conversations without prompting by a wake word. *See id.*

20. Amazon and Lab 126 use machine learning to leverage the massive amount of data collected by Alexa Devices—including these permanent voice recordings—to constantly refine the natural language understanding underlying Alexa's functionality. Many recordings are individually reviewed by Amazon and Lab 126 employees.[11]

21. However, Amazon and Lab 126 need not permanently store the audio recordings in order for Alexa Devices to function. Although it would not be as cost-effective or commercially advantageous, Alexa Devices could process audio interactions locally on the device and send only a digital query, rather than a voice recording, for cloud processing. Indeed, Amazon and Lab 126 launched a "Local Voice Control" feature for Alexa Devices that allows individuals "to fulfill a limited set of requests on select [Alexa] devices when the device is not connected to the internet, such as requests to control supported lights, plugs, and switches."[12]

22. Amazon and Lab 126 could also upload audio recordings to short-term memory in the cloud and immediately overwrite those recordings after processing, much like Alexa constantly overwrites the audio it captures prior to a user saying a wake word. If Amazon and Lab 126 did that, they would never possess a permanent recording of any user's communications.

23. Many similar "smart speaker" devices are less intrusive than Amazon's Alexa Devices. Apple recently apologized to its users for privacy mishaps relating to its natural-language processing system, "Siri," and announced that it would no longer retain audio recordings of Siri interactions, having previously maintained

---

[11] *Id.*

[12] *Alexa and Alexa Device FAQs*, Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (last visited September 18, 2019).

them for up to two years in anonymized form.[13] Likewise, Mercedes has developed voice recognition technology that allows drivers to ask their car for directions, and that offers substantial functionality even when the vehicle lacks an Internet connection (and, therefore, the vehicle cannot transmit a recording).[14]

24. Amazon has strong commercial incentives to collect as many Alexa recordings as possible. From the outset, Amazon has been a company built on the relentless acquisition of consumer behavioral data, whether through its ubiquitous AWS offerings, its ever-expanding online storefront, its entertainment platforms, and now the Alexa Devices it uses as its ears in every home.

25. The collection of Alexa Device recordings is a natural extension of Amazon's *modus operandi*: collect as much consumer data as possible through any means possible, streamline the process so that consumers cannot or will not stop the collection, and use Amazon's massive size to leverage that data more effectively than any of its competitors.

26. Simply put, the more data Amazon collects, the more use it has for each incremental data point Amazon collects.

27. Amazon's decision to make Alexa integration available to third-party product manufacturers at no cost is entirely consistent with this scheme. While

---

[13] Mark Gurman, *Apple Apologizes Over Siri Privacy and Will No Longer Retain Audio Recordings*, Bloomberg (Aug. 28, 2019, 11:52 a.m. EST), https://www.bloomberg.com/news/articles/2019-08-28/apple-apologizes-will-no-longer-retain-siri-audio-recordings (last visited September 18, 2019); Lisa Eadicicco, *Amazon Workers Reportedly Listen to What You Tell Alexa – Here's How Apple and Google Handle What You Say to Their Voice Assistants*, Business Insider (Apr. 15, 2019, 10:39 a.m. EST), https://www.businessinsider.com/how-amazon-apple-google-handle-alexa-siri-voice-data-2019-4 (last visited September 18, 2019).

[14] Matt Robinson, *In-Car Voice Control Still Isn't Perfect, But I'm Warming To It*, Car Throttle (March 2019), https://www.carthrottle.com/post/in-car-voice-control-still-isnt-perfect-but-im-warming-to-it/ (last visited September 18, 2019).

1 Amazon might have charged some companies a licensing fee for Alexa integration
2 (which its partners would then be able to pass on to consumers who value the extra
3 functionality), it offers that integration free of charge in order to facilitate the rapid
4 adoption of Alexa Devices, the ubiquitous use of Alexa, and the resulting
5 widespread collection of voice recordings of millions of people.

6   28.   Alexa devices respond to any individual who says the wake word.
7 Alexa Devices thus record communications involving individuals who did not
8 purchase the device or install the Alexa App.

9   29.   But Alexa has the ability to identify different users based on their
10 voiceprint.  Through this functionality, Alexa could determine whether or not the
11 person speaking to it has previously registered as a user and agreed to be recorded.
12 When Alexa detects that a user has not agreed to be recorded, it could inform the
13 user that Amazon and Lab 126 will make and keep persistent recordings of the
14 user's voice as a condition of use.  Alexa could ask the new user to agree to that
15 recording.  Or it could deactivate Alexa's permanent recording functionality for
16 such users.  But Alexa does not do this.

17   30.   At no point does Amazon or Lab 126 warn unregistered users that it is
18 creating persistent voice recordings of their Alexa interactions, let alone obtain their
19 consent to do so.

20   31.   When children say a wake word to an Alexa Device, the device records
21 and transmits the children's communications in the same manner that it handles
22 adults' communications.  Neither the children nor their parents have consented to
23 the children's interactions being permanently recorded.

24   ***Lab126 Records Children Without Their Consent***

25   32.   Lab126 developed Alexa to record and respond to communications
26 immediately after an individual says a wake word. Lab126 designed Alexa Devices
27 to accomplish this by storing a second or two of audio in short-term, random-access
28 memory (RAM), analyzing that temporary audio recording for the presence of a

wake word, and then overwriting it if the wake word is not recognized. As a result, no permanent recording is supposed to be made if the wake word is not recognized.

33. If the wake word is recognized, Lab126 developed Alexa and designed Alexa Devices to record the ensuing communications and—unlike some other smart devices—transmits recordings to Amazon and Lab 126's servers for interpretation, processing, and later analysis.

34. Lab 126 indefinitely stores copies of recordings made by Alexa after a wake word is recognized.

35. Lab126 uses machine learning to leverage the massive amount of data collected by Alexa Devices—including these permanent voice recordings—to constantly refine the natural language understanding underlying Alexa's functionality. Many recordings are individually reviewed by Lab 126 employees.

36. Lab126 uses the information gained from the recordings and its analysis to develop new Alexa functionalities such as mood or emotion detection,[15] and new devices such as the upcoming Vesta home robot.[16]

37. However, Lab 126 need not permanently store the audio recordings in order for Alexa Devices to function. Although it would not be as cost-effective or commercially advantageous, Lab126 could have developed Alexa and the Alexa Devices to process audio interactions locally on the device and send only a digital query, rather than a voice recording, to Amazon and Lab 126's servers. Indeed, Lab126 developed a "Local Voice Control" feature for Alexa Devices that allows

---

[15] Vlad Savov, *Amazon preparing a wearable that 'reads human emotions,' says report*, The Verge (May 12, 2019, 5:33 am EDT), https://www.theverge.com/circuitbreaker/2019/5/23/18636839/amazon-wearable-emotions-report (last visited September 18, 2019).

[16] Mark Gurman, *Amazon Plans High-End Echo, Ramps Up Work on Alexa Home Robot*, Bloomberg (July 12, 2019, 6:00 am EDT), https://www.bloomberg.com/news/articles/2019-07-12/amazon-plans-high-end-echo-ramps-up-work-on-alexa-home-robot (last visited September 18, 2019).

individuals "to fulfill a limited set of requests on select [Alexa] devices when the device is not connected to the internet, such as requests to control supported lights, plugs, and switches."[17]

38. Lab126 could have also designed Alexa to upload audio recordings to short-term memory in the cloud and immediately overwrite those recordings after processing, much like Alexa constantly overwrites the audio it captures prior to a user saying a wake word. If Alexa did that, it would never possess a permanent recording of any user's communications.

39. Lab126 developed Alexa and designed the Alexa Devices to respond to any individual who says the wake word.

40. Because Alexa and the Alexa Devices only function as programmed and designed, Lab126 recorded communications involving individuals who did not purchase the device or install the Alexa App.

41. Lab126 developed Alexa to be able to identify different users based on their voiceprint. Through this functionality, Alexa could determine whether or not the person speaking to it has previously registered as a user and agreed to be recorded. When Alexa detects that a user has not agreed to be recorded, it could inform the user that Lab 126 will make and keep persistent recordings of the user's voice as a condition of use. Alexa could ask the new user to agree to that recording. Or it could deactivate Alexa's permanent recording functionality for such users. But Lab126 did not program Alexa to do this.

42. Lab126 did not program Alexa or design the Alexa Devices to warn unregistered users that it is creating persistent voice recordings of their Alexa interactions, let alone obtain their consent to do so.

---

[17] *Alexa and Alexa Device FAQs*, Amazon, https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (last visited September 18, 2019).

43. When children say a wake word to an Alexa Device, Lab126, through the Alexa software, records the children without their consent, transmits those recordings to Lab 126's cloud servers, and uses the analysis of those recordings to make adjustments and developments to the Alexa software. Lab126 also uses the information gained from those recordings to develop new Alexa functionalities such as mood or emotion detection,[18] and new devices such as the upcoming Vesta home robot.[19]

44. Neither the children nor their parents, however, have consented to the children's interactions being permanently recorded.

### Facts Specific to Plaintiff R.A.

45. Plaintiff is a citizen of the State of California.

46. Plaintiff is nine years old.

47. Plaintiff's father purchased two Echo Dots in November 2018, giving one to Plaintiff as a Christmas gift that year.

48. Plaintiff's father set up Plaintiff's Echo Dot shortly after Christmas 2018.

49. Plaintiff did not set up his Echo Dot, nor did he install the Alexa App on any smartphone or tablet.

50. Although Plaintiff was not an Alexa registered user, he uses the Echo Dot a few times a week. Plaintiff, like many children, uses the Echo Dot to play music, to tell him jokes, and to help with math questions. Plaintiff will also ask the

---

[18] Vlad Savov, *Amazon preparing a wearable that 'reads human emotions,' says report*, The Verge (May 12, 2019, 5:33 am EDT), https://www.theverge.com/circuitbreaker/2019/5/23/18636839/amazon-wearable-emotions-report (last visited September 18, 2019).

[19] Mark Gurman, *Amazon Plans High-End Echo, Ramps Up Work on Alexa Home Robot*, Bloomberg (July 12, 2019, 6:00 am EDT), https://www.bloomberg.com/news/articles/2019-07-12/amazon-plans-high-end-echo-ramps-up-work-on-alexa-home-robot (last visited September 18, 2019).

Echo Dot random trivia questions and will test it to see if it recognizes movie references.

51. When Plaintiff used the Echo Dot, Amazon and Lab 126 recorded his communications and stored those recordings on their servers.

52. Plaintiff was unaware that when he spoke a wake word, an Alexa Device would record and store the ensuing private communications.

53. Because Plaintiff was not a registered Alexa user, he never agreed to having his communications recorded by Amazon and Lab 126. Plaintiff's parents likewise never agreed to Amazon and Lab 126 recording Plaintiff's communications.

54. Amazon and Lab 126 recorded Plaintiff's private communications without his consent, and without the consent of Plaintiff's parents.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> All citizens of the State of California who used a household Amazon Alexa Device while they were minors, but who have not downloaded and installed the Alexa App

56. Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57. **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is

impracticable. The Class likely consists of thousands of individuals, and their members can be identified through Defendants' records.

58. **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

   a. Whether Alexa Devices make permanent voice recordings of children who interact with them.
   b. Whether children who use Alexa Devices in their home have an objectively reasonable expectation of confidentiality.
   c. Whether Amazon fails to obtain consent to record children who are not registered users of Alexa Devices.

59. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the proposed Class. Plaintiff and Class members suffered invasions of privacy as a result of Defendants' uniform wrongful conduct.

60. **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

61. **Superiority:** This class action is appropriate for certification because class proceedings are available to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

62. Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**FIRST CAUSE OF ACTION**
**Violation of the California Invasion of Privacy Act**
**Cal. Penal Code § 632**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64. Plaintiff and the Class members used Alexa Devices within their families' homes.

65. When Plaintiff and the Class members used the Alexa Devices, Amazon created a recording of their device interactions, transmitted those recording to Amazon's and Lab 126's cloud servers, and retained copies of those recordings indefinitely.

66. Lab126 developed Alexa to create a recording of Plaintiff and the Class members when they used the Alexa Devices, transmit those recording to Lab 126's cloud servers, and retain copies of those recordings indefinitely.

67. Neither Amazon nor Lab126 warned or otherwise notified Plaintiff and the Class members that they would create persistent recordings of Alexa interactions.

68. Plaintiff and the Class members did not expect, and had no reason to expect, that Amazon or Lab126 would create persistent recordings of their Alexa interactions.

69.  Plaintiff and the Class members reasonably expected that their Alexa interactions would remain private.

70.  Plaintiff and the Class members never provided Amazon or Lab126 with consent to record their Alexa interactions, nor did Amazon or Lab126 even attempt to seek such consent.  Plaintiff's and the Class members' parents likewise never consented to Amazon recording their children's Alexa interactions.

71.  Amazon and Lab126 created the recordings of Plaintiff and the Class intentionally, as Amazon has publicly admitted that Lab126 desigend Alexa and the Alexa Devices to record every Alexa interaction.

72.  By creating persistent recordings of Plaintiff's and the Class members' Alexa interactions, Amazon "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to … record the confidential communication."

73.  By creating persistent recordings of Plaintiff's and the Class members' Alexa interactions, Lab126 "intentionally and without the consent of all parties to a confidential communication" used an "electronic amplifying or recording device to … record the confidential communication."

74.  Amazon's intentional and unlawful recording violated Plaintiff's and the Class members' right to privacy in their confidential communications, as protected by Cal. Penal Code § 632.

75.  Lab126's intentional and unlawful recording violated Plaintiff's and the Class members' right to privacy in their confidential communications, as protected by Cal. Penal Code § 632.

76.  Amazon and Lab 126 are able, and the Court should require it, to destroy the recordings they have made of Plaintiff's and the Class members' interactions with Alexa Devices, and Amazon and Lab126 can implement functionality sufficient to prevent unauthorized recordings in the future.

77.     Plaintiff, individually and on behalf of the Class, seeks: (1) an injunction requiring Defendants to obtain consent prior to recording minors' Alexa interactions and to delete those recordings already made, and to implement functionality sufficient to prevent unauthorized recordings in the future; (2) damages of $5,000 per violation under Cal. Penal Code § 637.2; and (3) costs and reasonable attorneys' fees under Cal. Penal Code § 637.2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff R.A. on behalf of himself and the proposed Class respectfully requests that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as class counsel;

B.     Declaring that Defendants' actions, as set out above, violate the state privacy laws cited herein;

C.     Requiring Defendants to delete all recordings of the Class members, and to implement functionality to prevent further recording of the Class members without prior consent;

D.     Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.     Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H.     Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

DATED:  Sept. 18, 2019          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   /s/ *Joseph C. Sarles*
       Joseph C. Sarles

Andrew H. Schapiro (*pro hac vice*)
andrewschapiro@quinnemanuel.com
Stephen A. Swedlow (*pro hac vice*)
stephenswedlow@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
Phone:  (312) 705-7400/Fax:  (312) 705-7401

Joseph C. Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Phone:  (213) 443-3000/Fax:  (213) 443-3100

Ashley C. Keller (*pro hac vice*)
ack@kellerlenkner.com
Travis D. Lenkner (*pro hac vice*)
tdl@kellerlenkner.com
J. Dominick Larry (*pro hac vice*)
nl@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Ste. 4270
Chicago, IL 60606
Phone:  (312) 741-5220/Fax:  (312) 971-3502

Warren D. Postman (*pro hac vice*)
wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 Street N.W., Suite 400E
Washington, D.C.
Phone:  (202) 749-8334/Fax:  (312) 971-3502

*Attorneys for Plaintiff and the Putative Class*